VAN EREM, Appellant, v. DAIRYLAND MUTUAL INSURANCE COMPANY, Respondent.

*November 3—December 2, 1958.*

452

For the appellant there was a brief by *Van Susteren & Bollenbeck* of Appleton, and oral argument by *Urban P. Van Susteren*.

For the respondent there was a brief and oral argument by *R. E. Johnson* of Waupaca.

CURRIE, J.   At the time of the accident the certificate of title to the Pontiac automobile driven by Gunderson was issued to Mrs. Gunderson. Thus she had legal title. The inference to be drawn from the undisputed testimony is that Gunderson was the equitable owner and that he exercised all the incidents of ownership. However, the defendant company had issued a certificate of insurance to be filed with the commissioner of motor vehicles in order to comply with the Financial Responsibility Law, which certified that it had

issued an operator's policy to Gunderson having the policy limits required by such law. Such certificate was filed by Gunderson with the department and by reason thereof he obtained a driver's license to take the place of the previously revoked license.

Independently of such certificate, the afore-quoted exclusion clause contained in the "Named Operator's Indorsement" to the policy would be applicable so as to defeat the plaintiff's attempt to fasten liability upon the defendant company. Therefore, the issue on this appeal is whether the issuance and filing of this certificate had the legal effect of modifying such exclusion clause. We deem it to be wholly immaterial that the actual filing of the certificate was made by Gunderson and not the company. This is because necessarily the sole purpose of the company in issuing the certificate was to enable Gunderson to file it and procure his driver's license.

The Financial Responsibility Law is now found in secs. 344.24 to 344.41, Stats., formerly sec. 85.09 (17) to (29), while the Safety Responsibility Law constitutes secs. 344.12 to 344.22, formerly sec. 85.09 (5) to (16) (c). As pointed out in *Laughnan v. Griffiths* (1955), 271 Wis. 247, 256, 257, 73 N. W. (2d) 587, the purpose of the Financial Responsibility Law is to provide a method of compensating for damages that may result from *future accidents* caused by negligence of the operator, as a condition for reissuing a license previously revoked, while the Safety Responsibility Law is only concerned with *past accidents*.

Where the proof of financial responsibility required by the Financial Responsibility Law takes the form of a certificate of insurance, the policy certified to may be either "an owner's or an operator's policy of liability insurance." Sec. 85.09 (21) (a), Stats. 1953. Sec. 85.09 (21) (c) further provides:

"Such operator's policy of liability insurance shall insure the person named as insured therein against loss from the liability imposed upon him by law for damages arising out of the use by him of *any motor vehicle not owned by him,* within the same territorial limits and subject to the same limits of liability as are set forth above with respect to an owner's policy of liability insurance." (Italics supplied.)

The word *"owner"* is defined in sec. 85.09 (1) (h), Stats. 1953, for purposes of both the Safety Responsibility Law and the Financial Responsibility Law, as "A person who holds the *legal title* of a motor vehicle," subject to certain exceptions not here material. We deem that such definition governs the interpretation of the phrase *"not owned by him"* appearing in sec. 85.09 (21) (c). Therefore, at the time of the accident Gunderson was driving a motor vehicle *"not owned by him"* within the meaning of the Financial Responsibility Law. By issuing its certificate of insurance, which certified to the existence of the "operator's policy" issued by it to Gunderson, so that it might be filed with the commissioner of motor vehicles to comply with the provisions of the Financial Responsibility Law, the defendant in effect certified that the policy covered any situation in which Gunderson's negligent operation of any motor vehicle not registered in his name caused injury to another. It would defeat the objective of such law if the defendant were permitted to show that its policy contained an exclusion clause which would negate such coverage.

We, therefore, determine that the defendant's act in issuing the certificate estops it from taking advantage of any clause in its policy which has the effect of reducing the coverage below that stated in the certificate.

There is a further reason why the exclusion clause is not effective to deny coverage with respect to the instant accident. Such clause is found in an indorsement to the policy entitled

"Named Operator's Indorsement." Sec. 85.09 (21) (f) 4, Stats. 1953, provides:

"The policy, the written application therefor, if any, and *any rider or indorsement which does not conflict with the provisions of the section* shall constitute the entire contract between the parties." (Italics supplied.)

Such indorsement does conflict with sec. 85.09 (21) (c), Stats. 1953, because it attempts to limit its operator's policy to a situation where the insured is not only not the registered owner of the vehicle driven but, in addition, has no equitable ownership therein. The only equitable-ownership exception the statute recognizes is that of a conditional vendee or lessee, or chattel mortgagor, who is entitled to possession. Sec. 85.09 (1) (h). Gunderson's equitable ownership did not fall within such statutory exception.

Counsel for the defendant company has advanced the argument that it was not necessary for Gunderson to have filed the certificate with the commissioner of motor vehicles, but could have filed the policy itself. This argument overlooks that sec. 85.09 (18), Stats. 1953, enumerates four alternate methods of filing proof of financial responsibility with the commissioner. Filing the policy itself is not included therein but filing the certificate of insurance is.

It was the obvious intent of the legislature that there should be no gap in the insurance protection afforded, where the proof of financial responsibility takes the form of filing a certificate of insurance. Before a driver's license will be issued to one in the position of Gunderson, who has had his license revoked, there must be proof of the existence of an owner's policy covering all motor vehicles registered in his name. If there are no motor vehicles registered in his name, there must be proof filed of the existence of an operator's policy issued to him. There would be a gap in such insurance protection if the Insurance Company, which has issued

the certificate as to the existence of an operator's policy, were permitted to rely on an exclusion clause that would not cover the insured operator when he was operating any vehicle not registered in his name.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion.

BROWN, J., took no part.